UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ZUBAIR YAQUB,<br>    Plaintiff | Case No. 1:05-cv-170 |
| | Hogan, M.J. |
| vs | |
| ALBERTO GONZALEZ,<br>United States Attorney General, et al.,<br>    Defendants | **ORDER** |

Plaintiff Zubair Yaqub brings this action pursuant to 8 U.S.C. § 1421(c), seeking judicial review of the decision of the Citizenship & Immigration Services of the United States Department of Homeland Security (CIS) denying his application for naturalization. This matter is before the Court following an evidentiary hearing, and on plaintiff's motion for summary judgment (Doc. 17), defendants' cross-motion for summary judgment (Doc. 18), and plaintiff's response thereto. (Doc. 22).

**FINDINGS OF FACT**

An evidentiary hearing was held on May 30, 2006, before the undersigned Magistrate Judge at which Mr. Yaqub testified under oath. Counsel for the government declined to cross-examine Mr. Yaqub. The Court finds from observing Mr. Yaqub's words and demeanor that his testimony is credible.

Plaintiff Zubair Yaqub was born in Pakistan on August 29, 1971. Mr. Yaqub arrived in the United States in September 1991. He currently resides in Dayton, Ohio. During his stay in the United States, Mr. Yaqub received a Bachelor of Science degree in management of information sciences and a Master of Business Administration degree from Wright State

University in Dayton, Ohio.  Mr. Yaqub was employed as a graduate assistant while working towards his post-graduate degree.  After graduation, Mr. Yaqub was employed by the NCR Corporation as a financial planning analyst for approximately three years.  He was then employed by the Dana Corporation as a credit analyst.  He is currently unemployed and seeking employment in his field of study.  During his work history, Mr. Yaqub dutifully paid his taxes.

Mr. Yaqub was married in 2004.  His spouse resides in Pakistan and is expecting their first child.  Mr. Yaqub's hope is to bring his wife and child to the United States to reside.  Mr. Yaqub testified that he believes in the values of life and liberty, pays his taxes, and wants to live in the United States.  He believes he does not have religious freedom in Pakistan.  If he does not obtain United States citizenship, he would have to abandon his permanent residence status in the United States because his spouse would be unable to join him in the Unites States for any extended period of time.

Mr. Yaqub has engaged in various charitable activities since arriving in the United States.  While a student at Wright State University, Mr. Yaqub raised money for disabled children.  He has also been a volunteer and blood donor for the Red Cross.  Mr. Yaqub is a supporter of human rights organizations in Pakistan, and has provided translation services for such organizations.  He has offered to provide translation services on behalf of the United States' humanitarian relief efforts in the Middle East, but has been advised he must be a United States citizen before his services will be accepted.

On August 26, 2002, Mr. Yaqub applied for naturalization. (Doc. 20, Exh. A).  In December 2003, he appeared for an examination on his application.  His application was denied on September 30, 2004 for his failure to show he was and is "a person of good moral character."

*Id*.

In this regard, the record shows that Mr. Yaqub was arrested on November 19, 1991 on a charge of assault.  Mr. Yaqub testified that he was a twenty-year-old college student at the time, and had been residing in the United States for only two months.  Mr. Yaqub testified that a neighbor in his apartment building had been drinking, was verbally abusive toward him, and cursed him for "making noise."  He testified that the neighbor was the aggressor, a fight ensued, and the police were called.  On the advise of counsel, he pleaded no contest to a charge of disorderly conduct and fined $100.00 and court costs.

In October 1993, Mr. Yaqub was issued a minor misdemeanor citation for public intoxication. (Doc. 18, Exh. B).  The ticket indicates he was "disorderly, combative, argumentative," was staggering, and smelled of alcohol. *Id*.  Mr. Yaqub testified that he and his college friends were at a local restaurant in Dayton, Ohio.  One of the students got into an argument with the restaurant manager who called the police.  The police officer asked the students to finish their food and leave.  When Mr. Yaqub questioned the officer and asked to explain their side of the story, he was arrested for public intoxication.  He denies being intoxicated and states he had consumed little more than one glass of beer.  He was not given a breathalyser test.  Mr. Yaqub testified that he was held for a few hours at the police station, paid a fine of $40.00, and was released.  He was not required to appear in court.

In February 2001, Mr. Yaqub was arrested for driving under the influence.  Mr. Yaqub understood that the ticket issued to him had been changed by the arresting officer which affected the ability of the police to charge him for DUI.  He was offered a plea deal and pleaded guilty to reckless operation.  Mr. Yaqub's driver's license was suspended for six months, but he was

given permission to drive to and from work. He was fined, but received no jail time. At the evidentiary hearing, Mr. Yaqub admitted he was unfit to drive at the time and should not have been driving.

In January 2003, Mr. Yaqub was convicted of driving under the influence. He stated that the incident did not involve an accident or any injuries. Mr. Yaqub also testified that when the incident occurred, he had been recently laid off from work and under a lot of personal stress. Mr. Yaqub was sentenced to 90 days in jail, with 87 days suspended. In lieu of incarceration, Mr. Yaqub was sentenced to a "home study" program and fined. Mr. Yaqub testified that prior to engaging in the home study program, he traveled overseas to visit his family. When he returned to the United States, he went to the court to inquire about completing the home study program. However, because he had not completed the home study program within a six month period, Mr. Yaqub was immediately jailed for three days. Mr. Yaqub testified that he was not aware there was a time limit for completing the home study program. He admits he was unfit to drive that night and expressed remorse for his actions.

Mr. Yaqub had a additional "stop sign violation" for which he was fined.

Mr. Yaqub's appeal of the denial of his application was denied by the CIS on December 1, 2004. *Id*.

On March 17, 2005, Mr. Yaqub filed the instant complaint seeking judicial review of the denial of his naturalization application. (Doc. 1).

**CONCLUSIONS OF LAW**

This Court has jurisdiction to review the denial of Mr. Yaqub's application for naturalization pursuant to 8 U.S.C. § 1421(c) which provides that judicial review "shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). *See Zayed v. U.S.*, 368 F.3d 902, 905 (6th Cir. 2004).

An applicant for naturalization bears the burden of showing "eligibility for citizenship in every respect." *INS v. Pangilinan*, 486 U.S. 875, 884 (1988). Any doubts as to eligibility are to be resolved in favor of the government. *Berenyi v. District Director*, 385 U.S. 630, 637-39 (1967).

This appeal focuses on Mr. Yaqub's alleged lack of good moral character. There appears to be no other bar to his naturalization under 8 U.S.C. § 1427. "Good moral character" is a condition precedent for naturalization. 8 U.S.C. § 1427(a) (3) and (e). Section 1427(a)(3) provides that "no person . . . shall be naturalized unless such applicant . . . during [the five years immediately preceding the date of filing his petition] has been and still is a person of good moral character." The statute sets forth a non-exhaustive list of persons not considered to have good moral character:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
> (1) a habitual drunkard;
> (2) Repealed. Pub. L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611.
> (3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

> (4) one whose income is derived principally from illegal gambling activities;
> (5) one who has been convicted of two or more gambling offenses committed during such period;
> (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;
> (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;
> (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).
>
> The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

8 U.S.C. § 1101(f).  In addition, section 1427(e) provides that "[i]n determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e).  The requirement of good moral character should be decided "on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

In the instant case, the Court finds that Mr. Yaqub has met his burden of showing he is and has been a person of good moral character within the statutory period.  While the Court does not condone the incidents involving Mr. Yaqub's use of alcohol, it cannot find that these incidents, in and of themselves, are sufficient to find that Mr. Yaqub lacks good moral character.  Other courts have found that DUI convictions, by themselves, do not preclude a finding of good

moral character when balanced against the applicant's positive contributions to the community. *See Cajiao v. Bureau of Citizenship and Immigration Services of the Dept. Of Homeland Security*, Civil Action No. H-03-2582 (S.D. Texas March 31, 2004); *Puciaty v. U.S. Dept. of Justice, I.N.S.*, 125 F. Supp.2d 1035, 1039 (D. Hawaii 2000). While some courts have found drunk driving to be a strong negative factor in assessing an applicant's moral character, *see Rico v. I.N.S.*, 262 F. Supp.2d 6, 10 (E.D.N.Y. 2003); *Le v. Elwood*, 2003 WL 21250632, at *2 (E.D. Pa. 2003), that factor was but one of a number of aggravating factors showing the absence of good moral character. For example, in *Le v. Elwood*, the court determined the applicant failed to meet his burden of showing good moral character "because in addition to the misdemeanor convictions for driving under the influence of alcohol, material portions of his testimony lacked credibility to a serious degree." 2003 WL 21250632, at *2. In *Rico v. I.N.S.*, the plaintiff's failure to accept responsibility for his past crimes, to establish his claim of rehabilitation, and to demonstrate remorse for his previous conviction for attempted rape in the third degree, in addition to his lack of in candor, precluded a finding of good moral character. 262 F. Supp.2d at 10.

In the instant case, Mr. Yaqub has established characteristics showing good morals. He came to the United States to better himself through education. He successfully obtained bachelor's and master's degrees and, in part, financed his education through employment with Wright State University. Mr. Yaqub has been employed with the NCR Corporation as a financial planning analyst and the Dana Corporation as a credit analyst. Although he is currently unemployed, he is searching for employment in his field. He has dutifully paid his taxes and has contributed to the good of the local community by performing charitable services

both during and after his university schooling.  He has expressed a desire and willingness to offer his translation services to assist this country's humanitarian efforts in the Middle East.  He is a husband and soon-to-be father who believes in the American values of life, liberty and religious freedom.

In terms of Mr. Yaqub's previous arrests, the Court does not give much weight to the 1991 conviction for disorderly conduct or the 1993 incident of public intoxication when Mr. Yaqub was a college student.  The lack of temporal proximity to his 2002 naturalization application, coupled with his youth and relative inexperience in the United States, indicate a lack of maturity or judgment rather than the lack of good morals.  In addition, the Court gives little weight to the stop sign violation for which Mr. Yaqub was fined.  It appears to be a relatively minor traffic infraction which fails to suggest a lack of good moral character.  While the two DUI arrests are more of a concern to this Court, the undersigned was impressed with Mr. Yaqub's forthrightness in admitting his impairment while driving, without making excuses therefor.  The lack of any further alcohol related incidents indicates that abuse of alcohol and disrespect for the law are not impediments to the finding of good moral character.

On balance, Mr. Yaqub's successful educational and employment endeavors, his future employment prospects, and his positive community contributions show he "has been and still is a person of good moral character" within the meaning of the statute.  The Court finds substantial evidence that Mr. Yaqub is a person of good moral character and that the denial of his application for naturalization was in error.  Accordingly, plaintiff's motion for summary judgment (Doc. 17) is **GRANTED**, and defendants' cross-motion for summary judgment (Doc.

18) is **DENIED**.  Mr. Yaqub's application for naturalization is hereby **GRANTED**.

    **IT IS SO ORDERED**.


Date:  6/5/2006          s/Timothy S. Hogan
                                         Timothy S. Hogan
                                         United States Magistrate Judge